IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.   No. 21-CR-383 RB

RICARDO ANTONIO NOVONDO-CEBALLOS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Defendant is charged with one count of reentry of a removed alien in violation of 8 U.S.C. § 1326(a) and (b) and now files a motion to dismiss the charge on the basis that it violates his rights under the Equal Protection Clause. Defendant argues that the legislative history of § 1326 shows that when Congress enacted this statute, originally coined the Undesirable Aliens Act of 1929 (UAA), it did so because of racist motivations and hostility toward Mexican immigrants. He argues that under a strict scrutiny standard of review, § 1326 is presumptively unconstitutional as it was enacted with a discriminatory purpose and still disparately impacts Latino individuals. The Government counters that Defendant's equal protection challenge should be evaluated under the rational basis standard of review because Congress has plenary power to regulate immigration. Under the rational basis standard, the Government posits that § 1326 is rationally related to a legitimate government interest, which is to ensure compliance with deportation orders and promote respect for the country's legal immigration process. As discussed below, while the Court acknowledges this statute's racist origins, it ultimately agrees that the statute should be evaluated under the rational basis standard and holds that Defendant's motion to dismiss on equal protection grounds is **DENIED**.

### I. Factual Background

On December 16, 2020, a U.S. Border Patrol Agent encountered Ricardo Antonio Novondo-Ceballos (Defendant) in Doña Ana County, New Mexico. (Doc. 1 at 1.) The agent questioned Defendant and learned that he was a Honduran national, illegally present in the United States. (*Id.*) While at the Santa Teresa Station for processing, agents discovered that Defendant was deported to Honduras in 2008 after committing an aggravated felony for "Lewd or Lascivious Battery on a child" in 2006. (*Id.*) Neither party has offered evidence to show that Defendant received permission from the appropriate authorities to reapply for admission into the United States.

### II. Legal Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation omitted). The Court will "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quotation omitted).

### III. Discussion

The Fifth Amendment of the Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. This clause contains an implicit guarantee of equal protection in federal laws identical to what the Fourteenth Amendment guarantees in state laws. *See Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 n.1

(2017). Thus, both the Fourteenth Amendment and the Fifth Amendment contain equal protection guarantees.

Courts apply one of three standards when examining governmental actions involving classification of persons. If governmental actions classify someone based on their suspect classification or fundamental right, such as one's race or national origin, the strict scrutiny standard applies. *See, e.g.*, *Johnson v. California*, 543 U.S. 499, 505 (2005). If classifications are based on a quasi-suspect class, such as gender, courts apply intermediate scrutiny. S*ee, e.g.*, *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1109 (10th Cir. 2008). And if any other governmental classification is involved, such as age or disability, the rational basis standard applies. S*ee, e.g.*, *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004). There is an added wrinkle to find a statute violative of the equal protection standard under the strict and intermediate scrutiny analyses: the aggrieved person much show *intent* on the part of the government to discriminate. Intent may be shown in three ways: 1) facial discrimination, *see, e.g.*, *Loving v. Virginia*, 388 U.S. 1 (1967); 2) discriminatory application, *see, e.g.*, *Yick Wo v. Hopkins*, 118 U.S. 356 (1886); or 3) discriminatory motive, s*ee, e.g.*, *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252 (1977).

Here, the parties disagree on what standard of review the Court should use. The Government asserts that "the proper standard of review for an equal protection claim challenging an immigration law" is rational basis because of Congress's plenary power to regulate immigration. (Doc. 19 at 5.) The Government argues that "§ 1326 is rationally related to a legitimate government interest" because it "has an interest in ensuring compliance with deportation orders and promoting respect for the country's legal immigration process." (*Id*. at 6.)

Defendant claims § 1326 should be analyzed under the strict scrutiny standard and the

*Arlington Heights* legal framework because there is a discriminatory motive behind the UAA, and because the statute still poses a disparate impact on Latino people. (Doc. 17 at 2.) Two recent Supreme Court opinions—*Ramos v. Louisiana*, 140 S. Ct. 1390 (2020) and *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020), which the Court discusses more fully in Section III(B) infra—provide the basis for Defendant's position. Defendant claims *Ramos* and *Espinoza* "confirm [that] courts [are to] examine the racial motivations of a law at the time of its passage, and that later reenactments do not cleanse the law of its original taint." (Doc. 17 at 17.) Defendant then states that the UAA's legislative history[1] "shows that racism and eugenics were, at minimum, a 'motivating factor' in the passage of the Undesirable Aliens Act." (*Id.* at 6.) Hence, per Defendant's logic, the racist roots of the UAA cause § 1326 to have a discriminatory purpose and trigger strict scrutiny analysis. Applying the second half of the *Arlington Heights* test, Defendant argues that § 1326 violates equal protection because there is a disparate impact on Latino people. Defendant states:

> Though no publicly available statistics exist concerning the national origin of persons prosecuted for § 1326 today, the overwhelming number of Border Patrol arrests along the southern border are of Mexicans or people of Latinx origin. In 2000, over 97% of persons apprehended at the border were Mexican. In 2005, Mexicans made up 86% of apprehensions, and in 2010, 87%. In the first five months of fiscal year 2021, 129,153 of the 129,393 people apprehended by Customs and Border Patrol agents nationwide because of inadmissibility were found at the southern border.

(*Id.* at 18.) Defendant concludes that this evidence shifts the burden to the Government "to show that the Undesirable Aliens Act of 1929 would have passed 'even had the impermissible purpose not been considered.'" (*Id.* at 20 (quoting *Arlington Heights*, 429 U.S. at 271 n.21).) After

---

[1] Defendant argues that the UAA "was conceived, drafted, and enacted by white supremacists out of a belief that the 'Mexican race' would destroy the racial purity of the United States." (Doc. 17 at 2.) The Court agrees that the legislative history bears out Congress's racist motivations in enacting the UAA. *See, e.g.*, *United States v. Ruiz-Rivera*, No: 3:20-MJ-20306-AHG, 2020 WL 5230519, at *1–2 (S.D. Cal. Sept. 2, 2020) (discussing the UAA's legislative history).

4

reviewing the record and pertinent case law, the Court agrees with the Government and will determine Defendant's equal protection challenge under the rational basis standard of review.

### A. The rational basis standard of review applies.

As noted above, Defendant relies on the Supreme Court's opinion in *Arlington Heights* to argue that § 1326 (a)(1) is "presumptively unconstitutional." (*Id.* at 1.) *Arlington Heights* holds there is an equal protection violation if: 1) a legislature enacted a facially neutral law with a discriminatory purpose as a motivating factor, and 2) the law disparately impacts a disfavored group. *Arlington Heights*, 429 U.S. at 265–68. The Court determines that analyzing § 1326 under *Arlington Heights* is incorrect, however, because Defendant is directly challenging a federal immigration law, which courts have routinely analyzed under the rational basis standard of review. When "Congress exercises [its] powers to legislate with regard to aliens, the proper standard of judicial review is rational-basis review." *Soskin v. Reinertson*, 353 F.3d 1242, 1255 (10th Cir. 2004); *see also Trump v. Hawaii*, 138 S. Ct. 2392, 2419 (2018) (A "deferential standard of review" applies in the immigration context); *Appiah v. U.S. I.N.S.*, 202 F.3d 704, 710 (4th Cir. 2000) ("[J]udicial review over federal immigration legislation has always been limited.").

The *Soskin* court observed, "Supreme Court precedent establish[es that] . . . the federal government can treat aliens differently from citizens so long as the difference in treatment has a rational basis." *Soskin*, 353 F.3d at 1254 (citing *Mathews v. Diaz*, 426 U.S. 67, 78–83 (1976)). Defendant argues that the deferential treatment afforded to immigration laws is not applicable to "laws that *criminalize* conduct." (Doc. 21 at 2 (citing, *e.g.*, *Wong Wing v. United States*, 163 U.S. 228, 237 (1896) (laws that punish illegal immigrants "must provide for a judicial trial to establish the guilt of the accused"); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (criminal proceedings concerning resident aliens must comply with adequate procedural protections); *I.N.S. v. Lopez-*

5

*Mendoza*, 468 U.S. 1032, 1042 (1984) (recognizing that "various protections that apply in the context of a criminal trial do not apply in a [civil] deportation hearing")).) This argument is without merit, however, because the case law Defendant cites "stand[s] for the proposition that criminal prosecution of immigration crimes is subject to constitutional limitations." *See United States v. Ruiz-Rivera*, No. 3:20-MJ-20306-AHG, 2020 WL 5230519, at *4 (S.D. Cal. Sept. 2, 2020) (citation omitted). "[N]one of these cases hold that a different standard of equal protection review applies to laws that are criminal versus civil in nature, or to challenges that are procedural versus substantive . . . ." *Id*. Because Defendant is challenging the constitutionality of an immigration law, precedent dictates that the Court should decide the matter at the lowest level of scrutiny — the rational basis standard of review. *See, e.g.*, *United States v. Yanez-Vasquez*, No. 09-40056-01-SAC, 2010 WL 411112, at *7 (D. Kan. Jan. 28, 2010) ("Congress has considerable power to exclude and regulate aliens, and its policies regarding aliens are largely immune from judicial inquiry."); *United States v. Ochoa-Colchado*, 521 F.3d 1292, 1297 (10th Cir. 2008) (in a case regarding an illegal immigrant's violation of 18 U.S.C. § 922(g)(5)(A), the Tenth Circuit relied on the Second Circuit's rejection of an immigrant's equal protection challenge to a predecessor statute under the rational basis test) (citing *United States v. Toner*, 728 F.2d 115, 128 (2d Cir. 1984)).

The rational basis standard of review is deferential toward governmental actions. *Seegmiller v. LaVerkin City*, 528 F.3d 762, 772 (10th Cir. 2008). To satisfy the rational basis test, "[§ 1326] need only be rationally related to a legitimate government purpose." *Powers*, 379 F.3d at 1215 (quoting *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002)). An equal protection claim will fail "if there is 'any reasonably conceivable state of facts that could provide a rational basis for the classification." *Copelin-Brown v. N.M. State Pers. Off.*, 399 F.3d 1248, 1255 (10th Cir. 2005) (quoting *Spragens v. Shalala*, 36 F.3d 947, 951 n.3 (10th Cir. 1994))

(quotation marks omitted). The government "has no obligation to produce evidence to sustain the rationality of a statutory classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993). Instead, the "burden is on the one attacking the legislative arrangement to [negate] every conceivable basis which might support it . . . ." *Id.* (quotation omitted)

Here, § 1326 satisfies the rational basis test because it "is a regulatory statute enacted to assist in the control of unlawful immigration by aliens." *United States v. Hernandez-Guerrero*, 147 F.3d 1075, 1078 (9th Cir. 1998) (quoting *Pena-Cabanillas v. United States*, 394 F.2d 785, 788 (9th Cir. 1968)). The Government has an interest in ensuring compliance with deportation orders and promoting respect for the country's legal immigration process. This interest is achieved by deterring illegal reentry into the United States. The Court finds it axiomatic that § 1326 rationally relates to that interest by sanctioning those who disregard a previous deportation order. The Court is not alone in drawing this conclusion; other courts have held the same. *See, e.g., id.* at 1078 ("[I]t is plain that § 1326 is a necessary piece of the immigration-regulation framework; without the threat of criminal prosecution that it provides, Congress' immigration-regulation authority would be fatally undermined"); *United States v. Henry*, 111 F.3d 111, 114 (11th Cir. 1997) ("Section 1326 is not based upon any common law crime but is a regulatory statute enacted to assist in the control of unlawful immigration by aliens.") (citation omitted); *United States v. Cupa-Guillen*, 34 F.3d 860, 863 (9th Cir. 1994) ("[T]here is a strong societal interest in controlling immigration and in effectively policing our borders. This interest is furthered by enhancing punishment against persons who illegally enter the country after having previously committed aggravated felonies.") (internal citation omitted). Therefore, the Court holds that § 1326 satisfies the rational basis standard of review.

### B. The *Arlington Heights* analysis is not applicable.

Defendant's analysis of § 1326 under the *Arlington Heights* standard is incorrect, because as an immigration law, it is subject to rational basis review. Defendant asserts that two recent Supreme Court cases, *Ramos* and *Espinoza*, compel the Court to "examine the racial motivations of a law at the time of its passage . . . ." (Doc. 17 at 17.) The Court is not persuaded. A brief account of each case will offer support for the Court's conclusion.

In *Ramos*, the Supreme Court dealt with the constitutionality of nonunanimous jury verdicts and determined that the Sixth Amendment "requires a unanimous verdict to convict a defendant of a serious offense." 140 S. Ct. at 1394. Though the court noted that "race was a motivating factor in the adoption of [the] States' respective nonunanimity rules" *id*. at 1394, it did not base its decision on this understanding; the holding hinged on the original public meaning of the Sixth Amendment's right to trial by jury, *id*. at 1396–97. In dissent, Justice Alito disagreed with the Court's reference to states' reasons for initially adopting the law. *Id.* at 1426. He stated that "the origins of the Louisiana and Oregon rules have no bearing on the broad constitutional question that the Court decides" because the laws were later recodified "under different circumstances." *Id.* Though the Court noted that it "could not ignore the very functions [the state] rules were adopted to serve[,]" *id.* at 1401 n.44, "the intent of the legislatures that passed the laws at issue in *Ramos* were not the decisive factors in the Court's decision . . . ." *United States v. Gutierrez-Barba*, No. CR1901224001PHXDJH, 2021 WL 2138801, at *4 (D. Ariz. May 25, 2021). The Court emphasized that even if the states had adopted the challenged laws "for benign reasons[,]" they would still be unconstitutional. *Ramos*, at 1401 n.44.

In *Espinoza*, the Supreme Court examined a challenge to a Montana law prohibiting families from using state-sponsored scholarships at religious schools. 140 S. Ct. at 2246, 2257.

Reviewing the case under the Free Exercise Clause of the First Amendment, the Court applied strict scrutiny and held that the law discriminated based on religious status. *Id.* at 2261. Concurring alone, Justice Alito argued that "the provision's origin is relevant under the decision we issued earlier this Term in *Ramos* . . . ." *Id.* at 2267. As the only Justice to address Justice Alito's contention, Justice Sotomayor stated that a law with an "uncomfortable past" is not automatically invalidated by its discriminatory origins. *Id.* at 2294 n.2.

Neither *Ramos* nor *Espinoza* hold that "courts [are to] examine the racial motivations of a law at the time of its passage, and that later reenactments do not cleanse the law of its original taint[,]" as Defendant proposes. (Doc. 17 at 17.) "That faulty premise underlies Defendant's entire motion." *See Ruiz-Rivera*, 2020 WL 5230519, at *3 (S.D. Cal. Sept. 2, 2020). The Court is simply unconvinced that it should forego the usual rational basis analysis of an immigration statute simply because Defendant has raised the specter of § 1326's racist origins.

Even if *Ramos* and *Espinoza* stood for the proposition that courts must examine the racial motivations of a law at the time of its passage, the Court finds that subsequent reenactments of § 1326 have cleansed the law of its original taint. Justice Sotomayor, concurring on her own in *Ramos*, stated, "[w]here a law otherwise is untethered to racial bias—***and perhaps also where a legislature actually confronts a law's tawdry past in reenacting it—the new law may well be free of discriminatory taint***." *Ramos*, 140 S. Ct. at 1410 (emphasis added). Though Defendant argues that Congress did not "purge the racial animus of the [UAA]" when it enacted the Immigration and Nationality Act (INA) in 1952 (*see* Doc. 21 at 7), the Court disagrees. The INA was amended in 1965 to include a provision stating: "[n]o person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence." Immigration and Nationality Act, Pub. L. No.

9

89-236, 66 Stat. 175, 911 (1965). "The INA abolished national-origin quotas, and instead established a worldwide immigration limit and expanded the preference system." *Gutierrez-Barba*, 2021 WL 2138801, at *4 (citation omitted. Essentially, the legislature "adopted amendments to the INA aimed at prohibiting invidious discrimination to remove the 'bad taint' of its prior iterations." *Id*. Accordingly, the Court finds that the legislature in fact did purge the racial animus of the UAA. As a result, Defendant's argument that § 1326 is "presumptively unconstitutional" is still incorrect.

Even if the Court did not find that Congress purged the racial animus of the UAA with its later enactment of the INA, the undersigned notes that other courts have rejected the notion that prior congressional intent remains operative until a future Congress makes an affirmative contrary showing. *See, e.g.*, *United States v. Rios-Montano*, No. 19-CR-2123-GPC, 2020 WL 7226441, at *6 (S.D. Cal. Dec. 8, 2020); *Johnson v. Governor of the State of Fla.*, 405 F.3d 1214, 1223 (11th Cir. 2005) ("Florida's 1968 re-enactment [of a provision originally adopted in 1868] eliminated any taint from the allegedly discriminatory 1868 provision."); *Cotton v. Fordice*, 157 F.3d 388, 392 (5th Cir. 1998) ("Because the motives of Mississippi's legislature and voters when § 241 was re-enacted are not impugned," the court chose not to invalidate the provision, even though the original version was enacted with a discriminatory intent.); *Hayden v. Paterson*, 594 F.3d 150, 166–67 (2d Cir. 2010) ("Given this substantive amendment to New York's constitutional provision and the lack of any allegations by plaintiffs of discriminatory intent reasonably contemporaneous with the challenged decision, we cannot hold that plaintiffs state a plausible claim of intentional discrimination as to the 1894 constitutional provision") (internal quotation marks and citations omitted). Therefore, the Court finds there to be no discriminatory intent under *Arlington Heights*.

Further, the Court finds there is no disparate impact on Latino individuals under the second

prong of the *Arlington Heights* analysis. Defendant states that "the overwhelming number of Border Patrol arrests along the southern border are of Mexicans or people of Latinx origin." (Doc. 17 at 18.) He supported this contention by listing off a series of statistics: "in 2000, over 97% of persons apprehended at the border were Mexican[,]" "[i]n 2005, Mexicans made up 86% of apprehensions, and in 2010, 87% [of persons apprehended at the border were Mexican] . . . ." (*Id*.) Defendant concludes by noting that "[i]n the first five months of fiscal year 2021, 129,153 of the 129,393 people apprehended by Customs and Border Patrol agents nationwide because of inadmissibility were found at the southern border." (*Id*.) The Court notes, however, that even though a higher percentage of individuals of Latinx origin are prosecuted for § 1326 violations, it does not automatically follow that they are disparately impacted. The Court agrees with the Government in that "[t]he proximity of a very large population of Hispanics to the Southern Border, as well the political and financial realities unique to Central America, fully explain the disproportionate number of Hispanics charged with violating §1326." (Doc. 19 at 15.) In support of this contention, "numerous courts examining similar issues have held that criminal immigration statutes do not disproportionately affect [Latino individuals] because any disparate impact may be explained on grounds other than race, such as geographic proximity to the United States." *Gutierrez-Barba*, 2021 WL 2138801, at *4 (citing *United States v. Rios-Montano*, No. 19-CR-2123 GPC, 2020 WL 7226441, at *7 (S.D. Cal. Dec. 8, 2020); *United States v. Gallegos-Aparicio*, No.: 19-CR-2637-GPC, 2020 WL 7318124, at *3 (S.D. Cal. Dec. 11, 2020); *United States v. Morales-Roblero*, No. 3:19-mj-24442-AHG, 2020 WL 5517594, at *10 (S.D. Cal. Sep. 14, 2020); *United States v. Lucas-Hernandez*, No.: 19MJ24522-LL, 2020 WL 6161150 (S.D. Cal. Oct. 21, 2020)).

### IV.     Evidentiary Hearing

Defendant also makes a request for an evidentiary hearing. "[A]n evidentiary hearing need not be granted as a matter of course . . . ." *United States v. Boffa*, 89 F.R.D. 523, 528 (D. Del. 1981). A hearing must be held "only if the moving papers allege facts with sufficient definiteness, clarity and specificity to enable the trial court to conclude that relief must be granted if the facts alleged are proved." *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972)). "[I]f facts urged in support of a hearing would not entitle the moving party to relief as a matter of law, no evidentiary hearing is required." *Boffa*, 89 F.R.D. at 528. Because Defendant's claim rests solely on the applicability of *Arlington Heights*, and, as stated above, the Court finds *Arlington Heights* to be inapplicable, there is no reason to hold an evidentiary hearing. *See, e.g.*, *United States v. Irwin*, 612 F.2d 1182, 1187 (9th Cir. 1980) (stating that there is no need for an evidentiary hearing where the materials provided to the court "show as a matter of law that [the defendant] was not entitled to relief"). Moreover, Defendant only seeks to present testimony from expert witness Dr. Kelly Lytle Hernández, who will testify regarding the historical events surrounding the UAA's passage. (Doc. 17 at 21.) Not only has the Court already reviewed numerous documents recounting the UAA's history (*see* Docs. 17-1–17-11), but it also determined that the UAA's admittedly racist origins do not control the standard of review the Court employs to analyze Defendant's challenge. Therefore, the Court finds an evidentiary hearing unnecessary.

### V.     Conclusion

In accordance with the foregoing, the Court hereby **DENIES** Defendant's motion to dismiss. The Court concludes: 1) the rational basis standard of review is appropriate in this context, considering the matter involves immigration; 2) the *Arlington Heights* analysis, and thereby the strict scrutiny standard of review, do not apply in this context. As noted above, readings of *Ramos* and

*Espinoza* show that they do not support Defendant's contention that "courts examine the racial motivations of a law at the time of its passage, and that later reenactments do not cleanse the law of its original taint." (Doc. 17 at 17.) Even if the Court analyzed this matter under the *Arlington Heights* standard, it still would find the provision to be constitutional because: 1) the Court disagrees that the UAA's prior congressional intent remains operative until a future Congress makes an affirmative contrary showing; and 2) it finds that there is no disparate impact on the Latinx community as explained above.

    **THEREFORE,**

    **IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 17) is **DENIED**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE